# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00507-CV

### Les Eckert and Aberdeen Insurance Services, Inc., Appellants

### v.

### Jose Montemayor, in his Official Capacity as Commissioner of Insurance for the State of Texas and Texas Department of Insurance, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN303607, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case, we review the district court's grant of summary judgment against Aberdeen Insurance Services, Inc. (Aberdeen Insurance), and Les Eckert concerning an order of the Commissioner of Insurance releasing Aberdeen Insurance from statutory supervision. *See* Tex. Ins. Code Ann. art. 21.28-A (West Supp. 2004-05). We will affirm.

## BACKGROUND

The underlying dispute concerns two distinct sets of statutory procedures in the Commissioner's arsenal of powers he may exercise to regulate Texas insurers and protect Texas insurance consumers. *See id*. §§ 81.001-85.052 (West Supp. 2004-05) (Discipline and Enforcement); art. 21.28-A (Insurer Delinquencies and Prevention of Insurer Delinquencies;

Supervision of Insurers and Proceedings, Conservatorships, Liquidations—Additional and Alternate Provisions). The first is the Commissioner's disciplinary power and the ability to enforce the insurance code against regulated insurers. *Id*. §§ 81.001-85.052. Under his disciplinary powers, the Commissioner may, after notice and opportunity for a hearing, cancel or revoke an insurer's authorization to engage in the business of insurance in Texas if the Commissioner finds that insurer to be in violation of, or to have failed to comply with, the insurance code or the Commissioner's rules. *Id*. § 82.051; *see also id*. § 82.001 (definition of authorization). The Commissioner may also assess an administrative penalty, suspend the insurer's authorization, or issue cease-and-desist orders. *Id*. § 82.052. He may also order restitution. *Id*. § 82.053. The focus of the Commissioner's disciplinary powers is to sanction and penalize insurers who violate insurance code provisions and to protect the public from unfair acts and fraudulent or hazardous conduct. *See id*. §§ 82.051-.053, 83.051.

However, the legislature has decided that "existing provisions and conditions of law and the ordered procedures of law are sometimes not adequate, nor appropriate under all circumstances, in respect of a need to remedy the financial condition and the management of certain insurers." *Id*. art. 21.28-A, § 1. Thus, it has created the second set of statutory procedures at issue here—a system of supervision "to provide for rehabilitation and conservation of insurers." *Id*. By "authorizing and requiring the additional facility of supervision and conservatorship by the commissioner," the legislature authorized the Commissioner to attempt to rehabilitate and conserve insurers and "to avoid, if possible and feasible, the necessity of temporary or permanent receivership." *Id*. In contrast to the Commissioner's disciplinary powers, the legislature's goal in

2

conferring these supervisory powers is to preserve insurer assets and, without regard to whether any wrongdoing has occurred, to ensure public confidence in the ability of the state to regulate the insurance industry. *Id*.

Upon a determination that an insurer is insolvent, that the continuance of its business would be hazardous to the public, that it has exceeded its statutory powers, or that it has failed to comply with the law, the Commissioner shall place the insurer under supervision and impose requirements for the termination of supervision. *Id*. art. 21.28-A, § 3. Supervision may last for up to 180 days. *Id*. During the period of supervision, the Commissioner may hold a hearing to review the insurer's progress in complying with the terms of supervision, after which the Commissioner may release the insurer from supervision or take charge of the insurer as conservator. *Id*. art. 21.28-A, §§ 3, 5. During conservatorship, the Commissioner may continue to operate the insurer's business or may direct the Attorney General to file a petition in Travis County to revoke the insurer's charter. *Id*. art. 21.28-A, § 5. The legislature has given the Commissioner discretion to determine the appropriateness of supervision, compliance with its terms, and the proper course of action within the supervisory powers granted. *Id*.

The facts in this case are not in dispute. Les Eckert individually held a General Property and Casualty license and a Surplus Lines license issued by the Texas Department of Insurance (the Department). He was also the president and sole director and shareholder of Aberdeen Insurance, which held Department-issued Corporate General Property and Casualty and Corporate Surplus Lines licenses. On November 17, 2000, the Department notified Eckert that it

3

intended to pursue a disciplinary action against both him individually and Aberdeen Insurance.[1] *See id*. §§ 82.001-.056. The Department suspected that Aberdeen Insurance and Eckert, acting as agents of third-party insurance carriers, wrongfully collected from customers amounts in excess of premiums actually due for insurance coverage and failed to forward to the carriers a portion or all of the premium funds due.[2]

On April 8, 2002,[3] the Commissioner issued an official order placing Aberdeen Insurance (but not Eckert individually) under supervision and appointing a conservator. The order explained that the Commissioner had determined that (1) Aberdeen Insurance had not complied with the terms of a previous supervision order; (2) Aberdeen Insurance's management might have engaged in unlawful transactions; (3) Aberdeen Insurance's management might not have the experience, competence, or trustworthiness to operate Aberdeen Insurance in a safe and sound

---

[1]   The appellate record does not contain the administrative record from the disciplinary hearings held in connection with this disciplinary notice. The record does contain affidavits of Stan Strickland and Elizabeth Fuller, Department staff attorneys, and the Commissioner's findings of fact. We have gleaned information concerning the disciplinary hearing from those documents.

[2]   The Commissioner ultimately concluded that Aberdeen Insurance and Eckert collected $27,746.05 from Montrose River Café on a premium owed of $23,886.00 but failed to timely forward any funds to the insurance carrier; $96,100.60 from EFA on premiums totaling $87,164.65 but forwarded only $5,463 to the insurance carrier; and $106,980.00, $7,338, and $122,002.18 from Titan Specialties for three different insurance policies but failed to forward any of those amounts to the insurance carrier. He also found that Aberdeen Insurance and Eckert entered into a premium finance agreement in Titan's name but without its authorization.

[3]   No party fully explains what happened between November 17, 2000, and April 8, 2002. However, we note that, based on our record, the hearing on the disciplinary action was held on December 20, 2002, pursuant to the Commissioner's *fifth* amended notice of hearing.

manner; (4) Aberdeen Insurance might not be able to pay its liabilities as they become due; and (5) rehabilitation or conservation of Aberdeen Insurance would not be inefficient or impracticable. *See id.* art. 21.28-A, § 3. The Commissioner also stated that supervision would be abated on a showing that Aberdeen Insurance had complied with various requirements detailed in the order. Furthermore, he would hold a hearing after notice, and, if he found compliance, abatement of the supervision order would be warranted. However, if the Commissioner found that Aberdeen Insurance failed to show compliance or if he found that Aberdeen Insurance violated a provision of article 21.28-A, he would enter an order applying article 21.28-A remedies and sanctions. *See id.* §§ 3, 5. Elizabeth Fuller, a staff attorney in the Legal & Compliance division of the Department, drafted the supervision order.

The Department set a hearing before an Administrative Law Judge (ALJ) at the State Office of Administrative Hearings (SOAH) on October 1, 2002, to determine whether Aberdeen Insurance had met the abatement terms set out in the supervision order. Aberdeen Insurance requested a continuance because Eckert was attempting to sell the company's assets. The Department agreed to the continuance, and Fuller and Aberdeen Insurance submitted a joint motion for continuance to the ALJ. The motion provided that the Department would request a new setting if Eckert failed in his attempt to sell the assets. Both parties jointly asserted that Aberdeen Insurance understood and agreed that it would "remain under a state of non-confidential supervision until this matter is withdrawn from the docket or a hearing is held."

The ALJ granted the motion, abating the case until at least after the completion of a hearing on the separate disciplinary action. On January 6 and 7, 2003, the ALJ held a hearing on the Commissioner's disciplinary action against Aberdeen Insurance and Eckert. Fuller was not a part

5

of that hearing. On February 23, Aberdeen sold its assets to a third party. On June 12, the ALJ issued a Proposal for Decision in the disciplinary proceeding recommending the revocation of Aberdeen Insurance's and Eckert's licenses. The Commissioner accepted this recommendation and revoked Aberdeen Insurance's licenses by order on August 14.

On September 5, 2003, Aberdeen Insurance and Eckert filed this original action against the Commissioner, the Department, and Fuller in her official and individual capacities[4] in district court, alleging that the Department "rekindled" the disciplinary hearing in violation of their due process rights because they had not been given an opportunity to show compliance with the supervision order. Aberdeen Insurance and Eckert also alleged a violation of due process of law because Fuller had advised Aberdeen Insurance of a "right to a hearing regarding the Supervision Order" and then intentionally refused them a hearing. *See* 42 U.S.C.A. § 1983 (West 2003).[5] They sought an injunction to prevent enforcement of the revocation order and declarations both that the revocation order is unenforceable and that they have a right to a supervision hearing according to the terms of the supervision order drafted by Fuller.

On September 19, the Commissioner denied Aberdeen Insurance's motion for rehearing on the revocation. At some point after September 19, Aberdeen Insurance and Eckert

---

[4] For ease of reference, we will refer to these three parties together as "appellees" when discussing the legal issues on appeal. However, we will continue to refer to the Commissioner, the Department, and Fuller separately when discussing the facts of this case or where the issues affect them in different ways.

[5] Section 1983 confers a private right of action against a person who deprives another of federal constitutional rights. 42 U.S.C.A. § 1983 (West 2003).

appealed the revocation order to district court and sought a temporary restraining order. The district court held a hearing on the temporary restraining order on September 29. During that hearing, Aberdeen Insurance and Eckert cited as support their contention that they had not been given a hearing to show compliance with the supervision order. Stan Strickland, chief of the Department's Financial Counsel Section, was present at that hearing[6] and told the court that the Department would release Aberdeen Insurance from supervision. Counsel for Aberdeen Insurance and Eckert did not object. The district court denied Aberdeen Insurance and Eckert's request for a temporary restraining order to stay application of the revocation order.

On October 15, the Commissioner issued an order, drafted by Fuller, releasing Aberdeen Insurance from supervision. The order noted Aberdeen Insurance's previous request for a continuance of the hearing on the supervision order and the separate disciplinary proceedings that led to the revocation order. Also noting that the district court denied the request to stay application of the revocation order and that Aberdeen Insurance was no longer conducting business, the Commissioner released Aberdeen Insurance from supervision. The Commissioner expressly stated that release from supervision did not ratify or signify approval of any actions taken by Aberdeen Insurance or Eckert.

Thereafter, appellees moved for summary judgment on this action based on the supervision-revocation order. *See* Tex. R. Civ. P. 166a(c). In the motion, they argued that compliance with Strickland's representation to the district court during the appeal hearing cannot

---

[6] An attorney from the financial litigation division of the Office of the Attorney General appeared as attorney of record for the Commissioner, the Department, and Fuller at that hearing.

give rise to a section 1983 cause of action or to a right to other relief; that Aberdeen Insurance and Eckert have not suffered damage because Aberdeen Insurance sold all its assets before the supervision order was revoked; that Fuller is entitled to qualified immunity in her individual capacity; that the Commissioner and Fuller met their burden of proof on their affirmative defense of official immunity; that the case is moot because Aberdeen Insurance has been released from supervision; that Aberdeen Insurance has no legal right to judicial review of the supervision order; that appellees' actions were authorized by law; and that this case is a collateral attack on the revocation order. The district court granted the motion for appellees. This appeal of the district court's grant of summary judgment concerning the supervision-revocation order followed.[7]

**DISCUSSION**

Aberdeen Insurance and Eckert present eight issues on appeal, alleging that the district court erred in granting summary judgment because: (1) Strickland's in-court representation that the Department would release Aberdeen Insurance from supervision was ambiguous and, in any event, the Department could not release Aberdeen from supervision without first providing notice and a hearing according to the terms of the supervision order; (2) Aberdeen Insurance and Eckert have suffered damages even though all Aberdeen Insurance's assets have been sold; (3) Fuller is not entitled to qualified immunity in her individual capacity; (4) Fuller has not met her burden of proof on her affirmative defense of official immunity; (5) the case is not moot even though Aberdeen Insurance has been released from supervision; (6) Aberdeen Insurance has a legal right to judicial

_____

[7] This appeal does not concern the district court's hearing concerning the license revocation order that resulted from the disciplinary hearing.

8

review of the supervision order; (7) appellees' actions were not authorized by law; and (8) this case is a permissible collateral attack on the license-revocation order that resulted from the disciplinary proceeding.

**Standard of review**

The propriety of a ruling on a traditional motion for summary judgment raises a question of law, which we review *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *see* Tex. R. Civ. P. 166a(c). Summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd). Evidence is viewed in the light most favorable to the non-movant with all reasonable inferences indulged and any doubts resolved in favor of the non-movant. *Pustejovsky*, 35 S.W.3d at 645-46; *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Missouri Pac.*, 86 S.W.3d at 790. Not until the defendant establishes its right to summary judgment does the plaintiff bear the burden of raising a fact issue. *Id*. Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

**Fuller's immunity**

Because Aberdeen Insurance and Eckert sued Fuller under section 1983, a resolution of the issues concerning her immunity are independent of the issues concerning the revocation of the supervision order itself. Thus, we will first consider the arguments presented by Aberdeen Insurance and Eckert that Fuller is entitled neither to official immunity nor to qualified immunity and then turn to their arguments concerning the revocation.

## *Official immunity*

In their fourth issue, Aberdeen Insurance and Eckert argue that Fuller failed to meet her burden of proof on her affirmative defense of official immunity. A suit against state employees in their official capacities is equivalent to a suit against the State; accordingly, employees acting in their official capacities share the State's sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Texas Dep't of Health v. Rocha*, 102 S.W.3d 348, 353 (Tex. App.—Corpus Christi, 2003, no pet.). The Texas Supreme Court has long recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue the State. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity does not, however, bar plaintiffs from seeking equitable relief from violations of law or a determination of rights under the law. *Federal Sign*, 951 S.W.2d at 404.

In this case, Fuller claims official immunity against the section 1983 claims of Aberdeen Insurance and Eckert. Official immunity is an affirmative defense. *University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Thus, the burden is on the defendant to establish all elements of the defense. *Clark*,

38 S.W.3d at 580; *Chambers*, 883 S.W.2d at 653. The elements of the defense of official immunity are (1) the performance of a discretionary function (2) in good faith (3) within the scope of the employee's authority. *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994); *Chambers*, 883 S.W.2d at 653.

On appeal, Aberdeen Insurance and Eckert concede that Fuller was performing a discretionary function. We thus begin by determining whether Fuller conclusively established that she acted in good faith. A person acts in good faith if a reasonably prudent person in the same or similar circumstances would have taken the same action. *Colbert v. Hollis*, 102 S.W.3d 445, 448 (Tex. App.—Dallas 2003, no pet.); *see also City of Coppell v. Waltman*, 997 S.W.2d 633, 638 (Tex. App.—Dallas 1998, pet. denied). In making this determination, we look to "whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time of the conduct." *Chambers*, 883 S.W.2d at 656. Accordingly, official immunity will protect all but the plainly incompetent or those who knowingly violate the law. *Id*. The test is one of objective legal reasonableness, without regard to whether the government official acted with subjective good faith. *Id*.

As a Department staff attorney, Fuller drafted the supervision order. She later set a hearing for October 1, 2002, to determine Aberdeen Insurance's compliance with the order. Eckert then informed her that a sale of Aberdeen Insurance's assets was imminent and asked for a delay of the hearing. Fuller agreed and submitted a joint motion for continuance to SOAH. In that motion, Fuller and Aberdeen Insurance represented that the Department would request a new setting if Eckert failed in his attempt to sell Aberdeen Insurance's assets. They also stated that Aberdeen Insurance

understood and agreed that it would "remain under a state of non-confidential supervision until this matter is withdrawn from the docket or a hearing is held." The ALJ granted the motion.

Fuller did not attend the SOAH disciplinary hearing that resulted in the revocation of the licenses of Aberdeen Insurance and Eckert. Although she attended the appeal hearing in district court regarding the revocation order, she did not participate; an assistant attorney general represented the Department. At that hearing, Strickland told the district court that the Department would release Aberdeen Insurance from supervision. As a result of that hearing and her knowledge that Aberdeen Insurance had sold its assets and was no longer conducting business, Fuller drafted an order releasing it from supervision. We find that Fuller met her burden of conclusively proving that a reasonable official could have believed her conduct to be lawful in light of clearly established law and the information possessed by her at the time of the conduct. *See Chambers*, 883 S.W.2d at 656. Thus, we determine that Fuller acted in good faith.

We now consider whether Fuller failed to act within the scope of her authority because she did not comply with procedural rights granted in the supervision order.[8] *See Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959). In *Vitarelli*, the Supreme Court considered the dismissal of an employee of the federal Department of the Interior. Although he could have statutorily dismissed the employee without giving any reasons, the Secretary of the Interior instead dismissed the employee for "national security" reasons. *Id*. at 536. The Secretary had previously issued rules governing discharge of government employees on security grounds, but he did not comply with those

---

[8] Aberdeen Insurance and Eckert argue only that Fuller acted outside the scope of her authority because she did not comply with procedural rights granted in the supervision order. They do not present any other basis for reviewing her actions.

12

rules in dismissing Vitarelli. *Id*. at 538. The Supreme Court acknowledged that the Secretary had the statutory authority to summarily discharge an employee in petitioner's status without giving any reason. *Id*. at 539. However, the Court decided that the Secretary, having chosen to proceed against the employee on security grounds, was bound by the regulations that he had promulgated for dealing with such cases. *Id*. at 539-40.

The supervision order in this case stated that Aberdeen Insurance could make a showing that it had complied with the terms of the supervision order. If it did, the Commissioner would abate the order. It also notified Aberdeen Insurance that "a hearing will be convened and conducted at [SOAH] . . . to determine whether [Aberdeen Insurance] has fully complied with this Order, and has met all requirements, as set forth in this Order, to abate the determination." If the Commissioner were to find, after a hearing, that Aberdeen Insurance failed to comply with the supervision order, had committed acts in violation of the insurance code, or was in a condition or status that would allow the Commissioner to exercise discretionary authority, the Commissioner might enter an order applying authorized remedies or sanctions.

Notably, the order does not state that the *only* means of release from supervision is through a hearing. The text of the order does not foreclose situations in which the Commissioner might release Aberdeen Insurance from supervision without conducting a hearing. Instead, it only establishes that the Commissioner would hold a hearing before applying any article 21.28-A sanctions or remedies. This is the sort of procedural protection that article 21.28-A envisions. Such a hearing affords Aberdeen Insurance the opportunity to show full compliance with the supervision

13

order, to obtain release from supervision, and to oppose the imposition of sanctions. But requiring a hearing any time the Commissioner decides to *release* an insurer from supervision, as Aberdeen Insurance and Eckert would here, would be an empty formality not anticipated by either article 21.28-A or the order. This is especially true when, as here, Aberdeen Insurance was no longer acting as an insurer at the time it was released from supervision.

In addition, the Department set a hearing before SOAH in the supervisory proceeding for October 1, 2002. Aberdeen Insurance requested a continuance from the Department because it anticipated the sale of its assets would render moot the need for a hearing. In that motion, Aberdeen Insurance indicated that it understood that it could be released from supervision without a hearing.[9] The Department joined the motion. The ALJ granted the motion and continued the case indefinitely. After Strickland told the district court at the appeal of the revocation order that the Department would release Aberdeen Insurance from supervision, Fuller drafted the release order. Given the language of the order and the course of events here, we find that Fuller acted within her authority.

Because Aberdeen Insurance and Eckert concede that Fuller's actions were discretionary and because we find that she acted in good faith and within her authority, we hold that

---

[9] In particular, Aberdeen Insurance stated:

Respondent understands and agrees that Respondent's status will remain unchanged pending the issuance of a decision or order by the commissioner and that, consequently, Respondent will remain under a state of non-confidential supervision *until this matter is withdrawn from the docket or a hearing is held*.

(Emphasis added.)

14

Fuller established the affirmative defense of official immunity. We overrule the fourth issue presented by Aberdeen Insurance and Eckert.

### *Qualified immunity*

In their third issue, Aberdeen Insurance and Eckert also argue that the district court erred in granting summary judgment for Fuller in her individual capacity because she is not entitled to qualified immunity. In particular, they argue that Fuller violated their "constitutional and statutory rights of due process" under section 1983 by not providing them the opportunity to show compliance with the supervision order and by refusing them a hearing.

"In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine if an official is subject to liability, we apply a two-prong test. We first consider the allegations in the light most favorable to the party asserting the injury and determine if the facts alleged show the officer's conduct violated a constitutional right. *Id*. (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If we find an alleged violation of a constitutional right, we then consider if the right was "clearly established." *Id*.

Concerning the violation of a constitutional right, we apply a separate two-part inquiry to due-process claims—we must determine whether Aberdeen Insurance was deprived of a protected interest, and, if so, what process was due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Concerning Aberdeen Insurance's claimed protected interest, the supervision order bound Aberdeen Insurance because Aberdeen Insurance held Texas insurance licenses and was acting as an insurer. *See* Tex. Ins. Code Ann. art. 21.28-A, § 2(a). Through supervision, the

Commissioner set conditions for Aberdeen Insurance to continue its operations as a Texas insurer. However, when Fuller drafted the supervision-release order, Aberdeen Insurance had no insurance licenses because the Commissioner had already revoked its licenses through the separate disciplinary procedure, and it had no assets because it had voluntarily sold them to a third party. *See generally id*. art. 21.28-A. It was not acting as an insurer. *See id*. art. 21.28-A, § 2(a). It therefore had no protected interests under the supervision statutory scheme or under the supervision order. We find that Aberdeen Insurance was not deprived of a protected interest.

In addition, we fail to see what process Aberdeen Insurance could have been due. As noted above, nothing in the supervision order establishes a requirement for a hearing for the Department to release an insurer from supervision. Because the Commissioner did not apply any article 21.28-A sanctions but instead *removed* Aberdeen Insurance from supervision, we find that Aberdeen Insurance was not entitled to any particular procedure to remove it from supervision even if it was deprived of a protected interest. Thus, the facts alleged do not show that Fuller's conduct violated a constitutional right of Aberdeen Insurance, and we have no need to consider the second prong of the qualified-immunity test—whether a constitutional right was "clearly established." *See Saucier*, 533 U.S. at 201; *Logan*, 455 U.S. at 428. We overrule the third issue presented by Aberdeen Insurance and Eckert.

**Collateral attack**

In their eighth issue, Aberdeen Insurance and Eckert argue that the district court erred in granting summary judgment on the merits of its claim because they are entitled to collaterally attack the revocation order. Aberdeen Insurance and Eckert concede that the merits of this case

16

constitute a collateral attack on the revocation order. They argue only that they are permitted to collaterally attack the revocation order because they are seeking attorney's fees under the Uniform Declaratory Judgments Act (UDJA) and section 1983. *See* 42 U.S.C.A. § 1988(b) (attorney's fees available for section 1983 claims); Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2004-05) (UDJA). They also argue that injunctive relief through collateral attack is appropriate to stay the revocation order. *See Kettlewell v. Hot-Mix, Inc.*, 566 S.W.2d 663, 668 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ).

Generally, an agency's final order, like the final judgment of a court of law, is immune from collateral attack. *Public Util. Comm'n v. Allcomm Long Distance*, 902 S.W.2d 662, 666 (Tex. App.—Austin 1995, writ denied); *see also Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 827 (Tex. 1958) (concluding that collateral attack on Railroad Commission order was impermissible because administrative statutes provided sole method of attack). Because administrative bodies are entitled to exercise, without interference from courts, only those functions conferred by statute, a trial court's intervention in an administrative proceeding may be permissible when an agency's actions exceed its statutory authority. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978). Therefore, a well-recognized exception to the rule that agency actions are normally immune from collateral attack occurs when an agency acts beyond the scope of its statutorily conferred powers; a suit for declaratory or injunctive relief will lie in such a situation. *Allcomm Long Distance*, 902 S.W.2d at 666. If administrative remedies are inadequate, a plaintiff may pursue an injunctive collateral attack. *See Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 773-74 (1947); *Kettlewell*, 566 S.W.2d at 668.

17

We have already decided that Aberdeen Insurance and Eckert have no valid due-process claims. Aberdeen Insurance was neither deprived of any protected interest nor entitled to any process to remove it from supervision. Thus, Aberdeen Insurance and Eckert cannot rely on section 1983 to bring this collateral attack on the revocation order.

As a result, Aberdeen Insurance and Eckert present only one claim to support this collateral attack—their request for attorney's fees under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The purpose of the UDJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). A party may not rely on the UDJA solely as a vehicle to recover attorney's fees. *See Hageman v. Luth*, 150 S.W.3d 617, 627 (Tex. App.—Austin 2004, no pet.); *Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.). Thus, Aberdeen Insurance and Eckert cannot rely on the UDJA's provision for an award of attorney's fees to support this collateral attack on the revocation order.

Aberdeen Insurance and Eckert offer no further basis to support this claim against the general rule that the Commissioner's order is immune from collateral attack. *See Allcomm Long Distance*, 902 S.W.2d 662 at 666. We overrule the eighth issue presented by Aberdeen Insurance and Eckert.

## CONCLUSION

We have decided that Fuller is entitled to both official and qualified immunity. We have also determined that the claims of Aberdeen Insurance and Eckert concerning the

18

Commissioner's order removing them from supervision constitutes an impermissible collateral attack on the Commissioner's license-revocation order.  Because our decisions concerning these issues fully resolve the dispute before us, we have no need to review the remaining issues presented by Aberdeen Insurance and Eckert.  We affirm the district court's grant of summary judgment.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   March 31, 2005

19